IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CARL PRATT, KEITH WALLACE,
TIM PARKER, JACKIE MANESS, and
PATRICK LINDSEY,

    Plaintiffs,

v.                                                                No. 07-1219

THE CITY OF LEXINGTON, TENNESSEE;
and GLENN WOOD, individually

    Defendants.

---

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

The Defendant Glenn Wood has filed a pleading entitled "Motion to Dismiss and/or for Summary Judgment." Because the Defendant's motion relies on documentary evidence in addition to the pleadings, the Court will treat the motion as one for summary judgment under Rule 56, Federal Rules of Civil Procedure.[1] Upon consideration of the Defendant's motion and the Plaintiffs' response, the Court GRANTS summary judgement for Wood on Plaintiff Jackie Maness's claim

---

[1]Federal Rule of Civil Procedure 12(d) provides:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

1

against him individually. The remainder of the Defendant's motion is DENIED.

## FACTUAL BACKGROUND[2]

Employees of the fire department of Lexington, Tennessee, Carl Pratt, Keith Wallace, Tim Parker, Jackie Maness, and Patrick Lindsey ("Plaintiffs"), filed a civil action against the City of Lexington and its fire chief, Glenn Wood, in his individual capacity ("Defendants"). (Docket Entry ("D.E.") No. 1, Complaint, at ¶¶ 5, 7.) They allege that the Defendants demoted them as punishment for their supporting an unsuccessful mayoral candidate and other local candidates. (Id. at ¶ 10.) The Plaintiffs claim such retaliation violated their rights to political participation and association. (Id. at ¶ 15-16.) Invoking 42 U.S.C. § 1983, they seek compensatory damages, back pay, front pay, reinstatement, attorneys fees, interest, punitive damages, and equitable relief. (Id. at ¶ 15-16.)

At a meeting on October 9, 2007, the Board of the Mayor and Aldermen of Lexington (the "Board") promoted Wood to fire chief. (D.E. 12, Mot. to Dis., at 2.) The Board minutes show that Fire Department Committee Chairman Frankie Stanfill simultaneously motioned to promote Wood and to transfer Maness to the Street Department. (D.E. 12, Mot. to Dis., Ex. 1B.) Stanfill's motion passed with five yes votes, one no vote, and one abstention. (Id.)

According to affidavits submitted by Plaintiffs Pratt and Parker, soon after the October 9 Board meeting, Wood summoned all full-time and volunteer firefighters together. (D.E. 15, Affid. of Pratt; Affid. of Parker.) Two city aldermen, Bennie Scott and Peggy Gilbert, also were purportedly present. (Id.) According to Pratt and Parker, Wood announced that he would be making "some changes" within the fire department. (Id.) Pratt and Parker also claim that Aldermen Gilbert

---

[2]The recited facts appear to be undisputed, unless otherwise indicated.

2

and Scott announced that the Board had delegated decisionmaking power to the new fire chief for the purpose of making "whatever changes he deemed necessary within the fire department." (Id.)

The Board reconvened on November 6, 2007, and according to the minutes, Wood submitted several "recommendations" to the Board "as part of the Fire Department's reorganization," which included the Plaintiffs' demotions at issue in this case. (D.E. 12, Mot. to Dis., Ex. 1C.) Wood's reorganization plan declared that Pratt be moved to shift commander as captain, Lindsey be transferred to firefighter and placed on a six-month probation, Parker be moved to lieutenant, and Wallace be moved to firefighter. (Id.) Stanfill made the motion to approve Wood's plan, which was adopted by the Board. (Id.) According to Pratt and Parker, the Board did not meaningfully deliberate before voting. (D.E. 15, Affid. of Pratt; Affid. of Parker.)

The Plaintiffs maintain that the sole motivating factor for the demotions was their support for former mayor Jack Johnson and other local political figures in lieu of the current mayor, Bobby Dyer, whom Wood supported. (D.E. 1, Complaint, at ¶ 9.) The Plaintiffs argue that other reasons given for their demotions are merely pretextual. (Id. at ¶ 11.) Wood claims he is entitled to qualified immunity from this suit because the Plaintiffs' factual allegations, taken as true, fail to establish that he violated their constitutional rights. Further, Defendant argues that he cannot be liable because he only made recommendations as to staff changes, and the Board was the final decisionmaker. In regard to Maness specifically, Wood points out that he could not have made the decision to transfer Maness because Wood did not hold the position of fire chief at the time the determination was made. For these reasons, Wood seeks summary judgment.

STANDARD OF REVIEW

In determining whether the pleadings sufficiently state a claim, the Court will "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). To avoid dismissal, however, "a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

> In considering summary judgment, the Federal Rules of Civil Procedure provide that
>
> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[] of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

I. Section 1983 Overview

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir.

1986). Where, as in this case, the alleged violation is that "a government official retaliated against a plaintiff for exercising" First Amendment rights, which is commonly referred to as a First Amendment retaliation claim, the second element of a § 1983 action can be broken down into three sub-elements: The Plaintiffs must prove (1) that they engaged in constitutionally-protected conduct; (2) the Defendants, under color of state law, took an adverse action against the Plaintiffs, which "would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the Defendants were motivated, at least in part, by the Plaintiffs' constitutionally-protected conduct. Mezibov v. Allen, 411 F.3d 712, 717 (6th Cir. 2005).

II. Qualified Immunity Overview

Executive officers generally enjoy qualified immunity in conducting their official duties. See Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (noting that "qualified immunity 'represents the norm' for executive officers") (quoting Malley v. Briggs, 475 U.S. 335, 340 (1986)). This means that "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied, (Nov. 21, 1994). In Saucier v. Katz, the United States Supreme Court articulated a two-step test to determine whether qualified immunity applies. 533 U.S. 194, 200-01 (2001); see also Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004). "A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's

6

conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01. If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established."[3] Id. As to the second step, a court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, . . . without regard to [the officer's] underlying intent or motivations."[4] Solomon, 389 F.3d at 173 (citations and emphasis omitted). In other words, the second step is objective. In order to support a finding that an officer is entitled to qualified immunity, the Court must conclude that the officer's actions were objectively reasonable. Id. at 174. Pursuant to the second step, qualified immunity may bar a lawsuit when the officer "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [that the officer] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004); see also Dunigan v. Noble, 390 F.3d 486, 491 (6th Cir. 2004). Whether the officer's misunderstanding of the law was reasonable, however, directly depends upon whether the constitutional right at issue was "clearly established." Saucier, 533 U.S. at 201.

---

[3]The Sixth Circuit requires that courts follow the order of analysis prescribed by the Supreme Court. Smith v. Capp, 430 F.3d 766, 773 n.3 (6th Cir. 2005) (stating that court must "always begin with the question of whether a right has been violated, and never begin with the question of whether any such right at stake has been clearly established").

[4]Although motivations of the officer are irrelevant to the objective second step in a qualified immunity analysis, they remain a key element in determining whether a defendant is liable under a First Amendment retaliation claim. Mezibov, 411 F.3d at 717. This highlights the fact that, though there may be some overlap in the analyses, whether a plaintiff can establish a claim under § 1983 and whether a defendant can assert the defense of qualified immunity are two separate issues. In the Defendant's motion, however, his argument focuses only on the first inquiry in the qualified immunity analysis–whether the facts alleged show that the officer's conduct violated a constitutional right. Because the Defendant's argument emphasizes only step one of the Supreme court's test, see Saucier, 533 U.S. at 200-01, the questions of whether the Plaintiffs have presented sufficient facts to support their claims and whether the Defendant deserves qualified immunity may be answered together.

7

III. Sufficiency of the Pleadings

Although Wood contends that the Plaintiffs' allegations do not establish a § 1983 claim against him, the Defendant's motion contains little substance to support this assertion. Wood's motion states that the Plaintiffs' complaint contains "conclusiory allegations regarding the violation of their First Amendment Rights."[5] (D.E. 12, Mot. to Dis., at 2.) The mere fact that a complaint contains some conclusiory factual assertions, however, does not render the complaint defective; to hold otherwise would mischaracterize the purpose and nature of the pleadings process. Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Even though courts "are not bound to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), the Court must assume that all factual "allegations in the complaint are true (even if doubtful in fact)" for the purpose of determining whether the pleadings are sufficient. Twombly, 127 S. Ct. at 1964.

The Plaintiffs' complaint alleges the following: the Plaintiffs supported certain local political figures; they were demoted in their employment for the city by the Defendant; and the demotion was motivated by their political participation. The Court must consider whether these facts, if found to be true, would establish all three elements of a First Amendment retaliation claim. See Mezibov,

---

[5] The rest of the Defendant's argument relies upon documents in addition to the pleadings. The Court does not consider additional documentary evidence when determining whether the complaint is sufficient on its face, though additional evidence may be considered in determining whether summary judgment is appropriate.

411 F.3d at 717. First, supporting candidates running a local election unquestionably constitutes conduct protected by the First Amendment. Id. Second, the Defendant's actions as fire chief would be under color of state law, and a demotion in employment status would "deter a person of ordinary firmness from continuing to engage" in the protected conduct. Id. Third, the facts alleged (particularly Wood's support of Mayor Dyer and the timing of the demotions) may be considered by a reasonable juror as circumstantial evidence indicating that Wood's decision to demote the Plaintiffs was motivated in part by the Plaintiffs' political participation. Id. Considering all factual allegations of the complaint to be true for the purpose of this analysis, the Court finds that the Plaintiffs have successfully pled a prima facie First Amendment retaliation claim against Wood under § 1983.[6]

### IV. Whether Summary Judgment Should Be Granted

Defendant Wood advocates that summary judgment is appropriate because the Plaintiffs cannot prove that he personally retaliated against them, considering that he did not make the final decision to transfer them. Put another way, he argues that the undisputed facts show that the Plaintiffs cannot establish the second element of a First Amendment retaliation claim, specifically that his actions under color of state law "would chill an ordinary person from exercising her First Amendment rights." Mezibov, 411 F.3d at 717; see also Wittstock, 330 F.3d at 902 (stating that the second element of a § 1983 claim is "that the deprivation [of their constitutional rights] was caused

---

[6]For the same reasons, the complaint satisfies step-one of the qualified immunity analysis because "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right[.]" Saucier, 533 U.S. at 200-01. Because the Defendant's motion does not argue that this action offends step-two of the qualified immunity analysis, the Court need not address this issue. See Solomon, 389 F.3d at 173 (stating that step-two is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted").

9

by a person acting under color of state law"). Citing to Poppy v. City of Willoughby Hills, 96 Fed. Appx. 292 (6th Cir. 2004) and Kamensky v. Dean, 148 Fed. Appx. 878, 879-80 (11th Cir. 2005), Wood claims that if "he was not the final decisionmaker, he cannot be held liable for any alleged adverse employment actions of the Board." (D.E. 12, Mot. to Dis., at 4-5.) Thus, so Wood's argument goes, because it is undisputed that he was not the final decisionmaker, summary judgment in his favor is appropriate.

Before addressing Wood's presentation of factual evidence, the Court must first determine whether his legal premise is correct, namely that an officer cannot be individually liable under a First Amendment retaliatory claim when that officer lacked decisionmaking authority.[7] In a general sense, a defendant must apparently have some authority or control over employment decisions in order to establish causation in a First Amendment retaliation claim. In Poppy v. City of Willoughby

---

[7]Initially, it should be noted that this inquiry differs from the test for whether an officer was a "final policymaker" for the purpose of determining municipal liability. See, e.g., St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Other Circuits have explicitly distinguished between a "final policymaker" for the purpose of determining municipal liability and a "decisionmaker" for the purpose of determining individual liability. See, e.g., Quinn v. Monroe County, 330 F.3d 1320, 1328 (11th Cir. 2003) (holding that an officer could be liable, even though the decision to terminate was subject to review by a board, because the officer had the authority to "immediately effectuate" the employee's termination). Neither party has cited to an opinion from the Sixth Circuit that explicitly draws this distinction. One of the cases relied upon by the Defendant, however, implicitly recognizes this difference by applying the "final decisionmaker" analysis for the purpose of determining individual liability under § 1983. Poppy, 96 Fed. Appx. at 295. This would be in accord with the Eleventh Circuit, which has noted,

> The . . . conflation of the "final policymaker" and "decisionmaker" inquiries would lead to untenable legal consequences. Under such a theory, a city manager could intentionally discriminate by terminating an employee without fear of liability so long as, at some point, the decision was reviewed by an unbiased board. While such a manager should not be able to create municipal liability when violating official policy, he should not be able to elude individual liability for his own unlawful actions.

Quinn, 330 F.3d at 1328.

Hills, a clerk of the city counsel had supported an unsuccessful mayoral candidate, and the clerk brought a § 1983 action claiming that the incumbent mayor made several adverse employment decisions in retaliation. 96 Fed. Appx. at 294. The District Court in Ohio granted summary judgment in favor of the defendant because the mayor lacked authority over employment decisions affecting the plaintiff. Id. In an unpublished split decision,[8] the Sixth Circuit affirmed, holding that the plaintiff could not satisfy "the causation element of a First Amendment retaliation claim" without showing that the defendant had decisionmaking authority. Id. at 295. Thus, at least one panel of the Sixth Circuit has determined that in order for a plaintiff to succeed in a First Amendment retaliation claim involving an employment decision, the defendant must have "exercised . . . authority or control over the terms or conditions of [the plaintiff's] employment." Id. at 294. Absent an opinion from this Circuit to the contrary, the Court accepts this standard and must next determine whether the evidence presented at this stage creates a material factual dispute.

    a.    Jackie Maness's Claim against Glenn Wood

Wood first argues that the undisputed facts entitle him to summary judgment with regard to Maness's claim. To support his argument, Wood attached the minutes from the October 9, 2007, Board meeting. These minutes reflect that Wood's promotion to fire chief occurred concurrently with Maness's demotion. (D.E. 12, Mot. to Dis., Ex. 1B.) The Defendant then points out that he

---

[8]The dissent felt that the majority had departed from the actual question at issue, namely whether the plaintiff had "presented sufficient evidence to permit a reasonable jury to find that 'under the circumstances, the [defendant's] acts were capable of deterring a person of ordinary firmness from engaging in the protected conduct.'" Poppy, 96 Fed. Appx. at 297 (Schwarzer, S.J., dissenting). The dissent concluded that the evidence showing the mayor's "campaign to 'get rid' of" the plaintiff indicated "harassment in retaliation for her exercise of her First Amendment rights," which was sufficient to support a First Amendment retaliation claim. Id. at 298 (Schwarzer, S.J., dissenting).

11

would not have had decisionmaking authority over Maness's transfer prior to his appointment as fire chief. The meeting minutes apparently support Wood's allegation that Maness cannot establish factual causation linking an exercise of Defendant's official authority to the alleged injury. The Defendant's evidence tends to establish that he had no decisionmaking authority with regard to Maness's transfer, which would negate an essential element of Plaintiffs' claim. See Poppy, 96 Fed. Appx. at 295. Considering this, the Defendant, as the moving party in the summary judgment motion, has successfully presented evidence showing that there is no genuine issue of material fact and that summary judgment is appropriate.

This does not end the inquiry, however. Because of Wood's initial presentation, the burden shifts to the Plaintiffs to designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. The Court finds that the Plaintiffs have failed in this task. Neither the response memorandum nor the accompanying documentation disputes Wood's assertion about the timing of Maness's transfer. Although the Plaintiffs disagree "as to the implication that the Board, on its own made the decision to transfer Maness to the Street Department," any unofficial influence that Wood had over the Board prior to his appointment as fire chief would be considered private action. For the purpose of satisfying the second element of a § 1983 claim,

> [a] private actor may be considered a person acting under color of state law (a state actor) if "(1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the state' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"

Wittstock, 330 F.3d at 902 (quoting Tahfs v. Proctor, 316 F.3d 584, 590-91 (6th Cir. 2003)). Further, the Sixth Circuit has laid out the following three tests for determining whether private conduct can be attributed to the state:

> The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. . . . The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

Ellison v. Garbarino, 48 F.3d 192, 195 (6th Cir. 1995) (internal quotation marks and internal citations omitted). Both the Plaintiffs' complaint and affidavits focus on Wood's actions as fire chief. The Plaintiffs have not presented evidence that Wood, as a private actor apart from his official fire chief duties, caused Maness to be transferred. In particular, the Plaintiffs point to no evidence showing that Wood's private conduct would meet any of the three tests prescribed by the Sixth Circuit. Id. Thus, because the Plaintiffs have not made "a showing sufficient to establish the existence of an element essential [to their] case, and on which [they] will bear the burden of proof at trial," Wood is entitled to summary judgment on Maness's claim against him individually. Celotex, 477 U.S. at 322.

    b. The Remaining Plaintiffs' Claims

Wood finally argues that the Court should grant him summary judgment on the remaining claims because the record shows that he "merely made recommendations," which the Board was free to either accept or reject. (D.E. 12, Mot. to Dis., at 6.) To support this argument, he points to the minutes from the November 6, 2007, meeting, which state that Wood presented "recommendations" as to the staffing changes, Alderman Stanfill made the "motion to approve this action," and the Board voted to adopt Wood's "recommendations." (Id. at Ex. 1C.) The Defendant claims that because it is undisputed that the Board made the final decision to transfer the Plaintiffs, he cannot be held individually liable and summary judgment is appropriate. With this, the Defendant has met

13

his initial burden by using documentary proof to show that there is not a genuine factual dispute to be tried, and the Plaintiff must present some "specific facts showing that there is a genuine issue for trial" in order to defeat summary judgment. Celotex, 477 U.S. at 324; Abeita, 159 F.3d at 250.

In rebuttal to the Defendant's evidence, the Plaintiffs have presented affidavits stating the following facts: Wood called a meeting of all firefighters; two city aldermen attended the meeting and stated that the Board had delegated authority to Wood to make "whatever changes he deemed necessary" in the fire department; Wood indicated at the meeting that he possessed the authority to make "some changes;" and the Board adopted all of Wood's proposals without meaningful debate. Presented with these facts, a reasonable juror could find that the Board had delegated actual authority to Wood, not merely to recommend, but to immediately effectuate employment decisions.[9] See Quinn, 330 F.3d at 1328 (holding that a county officer was a decisionmaker because he had "authority not merely to recommend [the plaintiff's] termination but to immediately effectuate [the plaintiff's] termination") (emphasis in original). The specific statements allegedly made by the aldermen and Wood–that the Board had delegated decisionmaking power to Wood–raise more than a mere metaphysical doubt as to whether this Defendant possessed actual authority over employment decisions at the time the demotions occurred. The alleged lack of debate at the meeting further bolsters the Plaintiffs' contention. Given these facts, it is conceivable that the fire chief possessed

---

[9]Generally, "whether an official had final policymaking authority is a question of state law," which should be decided by the Court. St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988). Drawing an analogy, the same might be said for the question of whether Wood had decisionmaking authority. Although neither party has presented legal authority that would establish whether Tennessee law gives the Board, the fire chief, or both authority over employment, determining who has such authority is not vital to deciding this motion. Even assuming that state law grants the Board full decisionmaking authority, there would still be factual disputes as to whether the Board delegated its authority to Wood.

14

concurrent authority, along with the Board, over employment decisions or, at the least, that the Board delegated authority to the fire chief prior to the November 6 meeting. Keeping in mind that the Court must view the evidence in a light most favorable to the Plaintiffs, Matsushita, 475 U.S. at 587, and cannot make credibility determinations, Adams, 31 F.3d at 379, the Court finds that a genuine issue of material fact exists as to whether the Board delegated authority to Wood to demote the Plaintiffs. Thus, the Defendant is not entitled to summary judgment on the remaining claims.

## CONCLUSION

For the reasons articulated herein, the Court **GRANTS** the Defendant's motion for summary judgment with regard to the claim of Plaintiff Maness against Defendant Wood individually. The Court **DENIES** the Defendant's motion for summary judgment on the remaining claims.

IT IS SO ORDERED this 9th day of September, 2008.

                                                                    s/ J. DANIEL BREEN
                                                                    UNITED STATES DISTRICT JUDGE